IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WALTER BREWER | § § § § § § § § § | |
| Plaintiff, | | |
| VS. | | NO. 3-10-CV-1721-N-BD |
| STATE OF TEXAS, ET AL. | | |
| Defendants. | | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Robert Duncan has filed a motion for summary judgment in this *pro se* civil rights action brought under 42 U.S.C. § 1983. In his complaint and interrogatory answers, plaintiff alleges that defendant, a Garland police officer, shocked him four times with a taser gun, despite the fact that plaintiff was walking away with his hands in his pockets, had no weapon, and posed no threat.[1] Defendant counters that he is entitled to qualified immunity as a matter of law because the use of force against plaintiff was not unreasonable under the circumstances. The issues have been briefed by the parties, and the motion is ripe for determination.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial

---

[1] Plaintiff also sued the State of Texas, the Garland Police Department, a Dallas County prosecutor, and his former attorney for other civil rights violations under 42 U.S.C. § 1983. The claims against those defendants were dismissed on initial screening. *Brewer v. State of Texas*, No. 3-10-CV-1721-N-BD, 2010 WL 5776059 (N.D. Tex. Dec. 2, 2010), *rec. adopted*, 2011 WL 488875 (N.D. Tex. Feb. 8, 2011).

burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir), *cert. denied*, 113 S.Ct. 82 (1992). The verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4); *see also King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

Here, defendant moves for summary judgment on his qualified immunity defense. "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Winston v. City of Shreveport*, 390 Fed. Appx. 379, 383, 2010 WL 3190709 at *3 (5th Cir. Aug. 12, 2010), *quoting Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court has established a two-step analysis to determine whether a police officer is entitled to qualified immunity. First, the court must decide "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); *see also Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir.), *cert. denied*, 125 S.Ct. 102 (2004). Second, the court must ask "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 129 S.Ct. at 816, *citing Saucier*

*v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). A court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first "in light of the circumstances in the particular case at hand." *Id.* at 818.

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 1355 (2003). This burden applies both at trial and on summary judgment. *Id.*; *see also Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). The plaintiff must rebut the defense by establishing that the allegedly wrongful conduct violated clearly established law. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). In order to overcome the defense of qualified immunity at the summary judgment stage, the plaintiff cannot rest on conclusory allegations or assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the defendant's conduct. *Id.*

Judged against these standards, the court determines that plaintiff cannot overcome the affirmative defense of qualified immunity. To prove that defendant violated his Fourth Amendment rights by using excessive force, plaintiff must show that the use of force was "clearly excessive to the need and was objectively unreasonable." *Nickols v. Morris*, No. 10-10497, 2011 WL 1085526 at *1 (5th Cir. Mar. 24, 2011), *citing Hill v. Carroll County*, 587 F.3d 230, 234 (5th Cir. 2009). The evidence shows that defendant learned from a reliable source that plaintiff was attempting to sell crack cocaine at a Garland apartment complex. (*See* Def. MSJ App. at 2-3, ¶¶ 4, 6). Through his experience as a neighborhood patrol officer, defendant knew that low-level crack dealers are frequently armed and under the influence of drugs. (*Id.* at 2-3, ¶ 5). When defendant spotted plaintiff and attempted to contact him, plaintiff walked in the opposite direction. (*Id.* at 3, ¶ 7). Defendant immediately ordered plaintiff to stop. (*Id.* at 3, ¶ 7). Upon hearing this command,

plaintiff placed his hands in his pockets. (*Id.*). Defendant then ordered plaintiff to stop and show his hands. (*Id.* at 3, ¶ 8). At that point, plaintiff turned and started walking "aggressively" towards defendant with his hands still in his pockets. (*Id.*). Defendant unholstered his taser gun and warned plaintiff that he would be "tazed" if he did not stop and show his hands. (*Id.*). When plaintiff failed to comply with that command, defendant administered his taser gun for a five second cycle -- the shortest cycle available. (*Id.* at 3-4, ¶ 9). Plaintiff fell to the ground and briefly showed his hands before starting to reach back under his body and hiding his hands around the waist area. (*Id.*). Defendant then administered his taser gun for another five second cycle, instructing plaintiff to remove his hands from under his body. (*Id.*). Plaintiff finally complied with that order and was placed in handcuffs by a backup officer. (*Id.*). While handcuffed, plaintiff quickly moved his hands towards his waist area, concealing his hands under his body. (*Id.* at 4, ¶ 10). Defendant used his taser gun on plaintiff for a third time, after which plaintiff was taken into custody without further incident. (*Id.*). Two clear plastic bags of crack cocaine were recovered from plaintiff's pockets. (*Id.* at 4, ¶ 11). By his own admission, plaintiff was "out of control" and "not in [his] right mind" at the time of the incident in question because he was "tripping" on drugs. (*Id.* at 9-10).

Many courts, including the Fifth Circuit, have upheld the use of deadly force by police officers when suspects refuse to obey commands regarding the placement of their hands. *See, e.g. Carnaby v. City of Houston*, 636 F.3d 183, 188-89 (5th Cir. 2011) (upholding use of deadly force against suspect whose actions could reasonably be interpreted as reaching for a weapon); *Reese v. Anderson*, 926 F.2d 494, 499-501 (5th Cir. 1991) (reasonable for police officer to shoot unarmed suspect who disobeyed order to put up his hands). This includes the use of taser guns. *See Shulgan v. Noetzel*, No. CV-07-051-JLQ, 2008 WL 1730091 at *10-11 (E.D. Wash. Apr. 10, 2008) (multiple use of taser was not unreasonable where suspect did not obey officer's commands to "take his hands

out of his pockets and to stop"). Other than generally alleging that defendant used excessive force against him, plaintiff offers no evidence to controvert defendant's version of the facts. Without evidence to show that the force used against him was clearly excessive to the need and objectively unreasonable, plaintiff cannot create a genuine issue of material fact for trial.

## RECOMMENDATION

Defendant's motion for summary judgment [Doc. #41] should be granted. This case should be dismissed with prejudice.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 7, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE